IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| TERENCE FENNELL, | |
| Plaintiff, | |
| v. | Case No: 17-cv-03291 |
| BNSF RAILWAY COMPANY, | Judge Charles R. Norgle |
| Defendant. | |

## OPINION AND ORDER

Defendant's motion for summary judgment [64] is granted. The clerk is directed to enter judgment in favor of Defendant pursuant to Fed. R. Civ. P. 58.

## STATEMENT

This case involves a race discrimination claim under 42 U.S.C. § 1981 ("§ 1981") and a claim of employment retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000(e) *et seq*. Terence Fennell ("Plaintiff" or "Fennell") is a Conductor and Locomotive Engineer, and sues his former[1] employer for discriminating against him because he is African-American, and retaliating against him by firing him for asserting his civil rights. His claims primarily involve two incidents: (1) a March 3, 2015 incident in which he allegedly lied to his employer and for which he received disciplinary action, and (2) a September 14, 2015 incident in which he allegedly caused physical locomotive switch damage and which resulted in his termination. For the following reasons, the Court finds that Plaintiff does not make out a prima

---

[1] It is unclear to the Court whether Fennell is still employed by BNSF, as he was initially recommended for termination in relation to one of the incidents discussed further below, but a review committee then recommended a lesser punishment. In any event, Plaintiff's current employment is irrelevant to the analysis laid out in this opinion.

1

facie case of racial discrimination. Because no reasonable juror could conclude that Plaintiff would have avoided the discipline and subsequent dismissal had he been of a different race and everything else remained the same, the Court grants Defendant's motion for summary judgment.

## I. BACKGROUND

### The Parties

These are the relevant facts.[2] Plaintiff began his employment with BNSF Railway Company ("BNSF") in 2004 as a Conductor and became a Locomotive Engineer in 2010. Fennell was trained and tested annually on BNSF's Safety and General Code of Operating Rules ("GCOR").

BNSF is a Delaware Corporation, licensed and doing business in the state of Illinois. BNSF maintains several policies designed to prevent and address issues involving workplace discrimination, retaliation and harassment, including an Equal Employment Opportunity Policy ("EEO Policy") that applies to all employees. BNSF's EEO Policy instructs employees who believe they have been subject to discriminatory treatment to immediately report such behavior to their supervisor, the appropriate Human Resources Representative and/or the BNSF Hotline. BNSF also has a progressive discipline policy called the "Policy for Employee Performance Accountability" ("PEPA"). The PEPA Policy sets out BNSF's varying levels of discipline into three increasingly serious categories: (1) Level 00 or Standard violations; (2) Level S or Serious violations; and (3) Stand Alone dismissible violations. The PEPA Policy describes what types of rule violations fall under each level.

---

[2] The following undisputed facts were taken from the parties' Local Rule 56.1 statements, including: Defendant's Statement of Material Facts ("SOMF"); Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp."); Plaintiff's Statement of Additional Facts ("SOAF"); and Defendant's Response to Plaintiff's Statement of Additional Facts (Def.'s Resp."). The Court notes that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C); Banks v. Dart, No. 12 C 4333, 2014 WL 625865, at *2 (N.D. Ill. Feb. 18, 2014).

When an employee is charged with a rule violation, the employee has the option to accept responsibility for their actions, waive the disciplinary investigation hearing, and accept discipline. If the employee does not accept responsibility and does not take a waiver, an investigation hearing provided for by the Collective Bargaining Agreement ("CBA") must be conducted before discipline can be assessed against the employee.

Facts

The first relevant incident involving Plaintiff occurred on March 3, 2015, when Plaintiff was called by a crew caller between 10:00 p.m. and 10:30 p.m. to be an engineer on the train route between Aurora, Illinois and Savanna, Illinois. Plaintiff told the crew caller "Yeah, I'm, I'm not going to be qualified to take this call." The crew caller told Plaintiff that he showed qualified until October 7, 2015. Fennell responded "I know, but if I go to Savanna which I have, you know, I say I'm not qualified ... But if I go to Savanna, I will be pulled from service." When asked one final time by the crew caller if his license was going to expire, Fennell said "yeah." Fennell never told the crew caller that his certification had expired, but that it was "going to" expire.

Based on that conversation, a disciplinary investigation was conducted regarding Plaintiff's potential dishonesty with the crew caller. Upon learning of the communication between Plaintiff and the crew caller, terminal manager Jeremy Schroeder, who is Caucasian, made the decision to conduct a formal investigation. Schroeder was in charge of conducting the investigation. At that time, Schroeder supervised Plaintiff, monitored his performance, and would make recommendations regarding possible discipline following any investigations into performance issues.

Prior to the investigation, Fennell wrote a statement regarding the incident to John Schweiss, his union representative, which stated in part, "I informed the crew caller that I wasn't

3

qualified at this time because my license was due to expire/held from service." This was factually incorrect. Plaintiff asserts that his letter to Schweiss "explained that BNSF had informed [Plaintiff] that he was required to take a Year B training[3] to prevent his certification from being expired." Dkt. 77, ¶ 3.

The process of a formal investigation hearing is governed by the CBA. The conducting officer will call witnesses provided by BNSF and the employee, allow each witness to be questioned, and enter any physical evidence presented by either party. Before Plaintiff's formal hearing, Schweiss requested that the hearing be postponed until the crew caller could attend the hearing, but Schroeder decided to disregard the request and proceeded with the hearing sans the crew caller.

The formal investigation hearing was held on April 7, 2015 and conducted by Schroeder. At the hearing, Plaintiff testified that he was trying to convey to the crew caller that he had to take his Year B training, or he would be pulled from service. That was factually incorrect because an employee is required to complete Year B training during the 12-month calendar year, thus Plaintiff had until December 31, 2015, to complete his Year B training, either in an instructor-led class or through a web-based course.[4] At the time of the call on March 3, 2015, Plaintiff's engineer's certificate was current and good through February 24, 2017.

Schroeder never asked Plaintiff during the investigation to explain what he meant by the word "qualified." Defendant and Plaintiff disagree about what was really meant by or communicated by Plaintiff when he described himself as not "qualified."

---

[3] Year B training is a required training for operating officers that includes air brake, train handling, and other training. An engineer who missed his Year B training would be the subject of an investigation. Fennell's Year B training did not have to be completed until December 31, 2015.

[4] Despite admitting this fact, Plaintiff still contests that "the factual correctness of Plaintiff's statement does not speak to whether he was dishonest." Dkt. 72, ¶ 12.

4

As the conducting hearing officer, Schroeder determined that Plaintiff had violated two rules under the GCOR: (1) Rule 1.6, which states in part that employees must not be dishonest or immoral, and that "any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported" and (2) GCOR 1.13 regarding "Reporting and Complying with Instructions." Plaintiff maintains that these determinations were pretext for discrimination and believes the investigation was conducted unfairly because he was being discriminated against.

Schroeder recommended to the PEPA team, per its own policy, that Plaintiff receive a Level S (Serious) violation with a 30-day record suspension and 36-month review due to the seriousness of Plaintiff's dishonesty. Violation of GCOR 1.6 is a Stand Alone dismissible violation, but Schroeder recommended a lesser discipline of a Level S. The PEPA team agreed with the recommended discipline, and on April 17, 2015, Plaintiff was issued the recommended discipline.

Plaintiff appealed that decision using procedures established by the CBA and appealed to all levels available to him, including the Public Law Board ("PLB"). The PLB, established by the Railway Labor Act, noted that the discipline had been imposed for knowingly making a false statement to the crew caller and found that BNSF had substantial evidence to meet its burden of proof with respect to that charge.

The second relevant[5] incident involving Plaintiff occurred on September 14, 2015, when Plaintiff was part of a 3-person train crew with Jerry Orozco and Ryan Harmon. The crew was

---

[5] The Court acknowledges that Plaintiff also points to other incidents to argue that there was a pattern showing that BNSF was purposely looking to discipline him for discriminatory reasons. For example, he points to a later-overturned December 8, 2015 notice signed by Schroeder where Plaintiff was assessed a Standard Formal Reprimand for allegedly failing to perform service as a full-time employee. However, those other allegations do not impact the Court's determination in this case as set out in this opinion.

5

executing train operations, and a switch run-through occurred. This is when movement has been made to the switch points that are not properly aligned for movement, forcing the switch points to move and damaging the switch. When this happened, Orozco notified the Trainmaster, Brian Robinson, to inform him of the damaged switch. Robinson subsequently inspected the switch and found the switch rod was severely bent. Upon kicking the switch clamp, the switch handle jolted upward.

According to Plaintiff, Harmon had made a hand gesture causing Plaintiff to believe that Harmon was confused. When Plaintiff went to help Harmon, she allegedly told him that she was having difficulty throwing the switch. Plaintiff asserts that he then helped her throw the switch. Therefore, says Plaintiff, he did not touch the switch when they came off the track because they were already in line for the track. BNSF disputes this point.

At some point, Robinson stated that he had interviewed each crew member individually. Orozco and Harmon reported the same story—that they were riding in the head end position and could not see the switch point that was being protected by Plaintiff. When Harmon exited the engine and tried to throw the switch, she could not. Plaintiff characterized Robinson's statement as "very inaccurate."

Terminal manager Joseph Ratulowski, who is Hispanic, decided to hold a formal investigation hearing based on the incident. Plaintiff received notice on September 15, 2015 that the formal hearing would be held on October 7, 2015. However, on October 7, 2015, Plaintiff received notice of investigation postponement. The next day, October 8, 2015, Plaintiff filed a Charge of Discrimination with the EEOC against BNSF under Title VII, claiming that he had been "harassed, disciplined, and subjected to different terms and conditions of employment, including but not limited to having my training delayed." On October 22, 2015, Plaintiff received notice of

6

investigation postponement and that the hearing was scheduled for November 20, 2015. On November 5, 2015, the EEOC issued a dismissal and notice of rights letter to Plaintiff for his October 8, 2015 claim of discrimination.

The formal investigation hearing for the September 14, 2015 incident was held in accordance with the CBA on November 20, 2015, with the entire crew present: Fennell, Orozco and Harmon, as well as a union representative for each, and company witness Robinson. Ratulowski found the testimony of Orozco and Harmon consistent with the physical evidence and determined that Fennell did not protect the shove move properly because he allowed the engine to run through the switch in violation of two GCOR rules. Ratulowski found Fennell in violation of: (1) GCOR 6.5 regarding "Shoving Movements" and (2) GCOR 8.2 regarding "Position of Switches." Plaintiff denies that he violated these rules.

According to Defendant, Ratulowski made the final decision and recommendation for Plaintiff's dismissal based on the September 14, 2015 incident. Ratulowski made the decision to dismiss Plaintiff in accordance with the PEPA Policy because Plaintiff already had a Level S violation from the March 3, 2015 incident and at the time was under a 36-month review from that previous incident. Ratulowski consulted with the PEPA team on the recommended discipline and the PEPA team agreed with the dismissal. Plaintiff was terminated on December 16, 2015.

Plaintiff again appealed BNSF's termination decision through the procedures of the CBA. On April 12, 2018, the PLB found there was substantial evidence that Plaintiff failed to properly protect the shove movement and agreed that the discipline imposed was in accordance with BNSF's PEPA Policy. However, the PLB directed that he be reinstated without backpay, stating that "permanent dismissal was excessive" given it was his "first operating violation" after "nearly eleven years of service." Pls. Resp. (Dkt. 72), ¶ 25.

According to Plaintiff, BNSF's basis for disciplining him for the incidents occurring on March 3, 2015 and September 14, 2015 is pretext for discriminatory and retaliatory conduct. He alleges that other similarly situated employees, who are not of his protected class, were treated better than he was. Specifically, he identifies ten BNSF employees who are not members of a protected class who were allegedly disciplined more leniently than he was after the same or similar conduct.[6] Plaintiff also denies that Ratulowski had no knowledge of Plaintiff's EEOC charge when deciding to recommend his termination. Defendant maintains that the alleged comparators were all disciplined in accordance with BNSF's PEPA Policy and are all factually distinguishable from Plaintiff.

Ratulowski, who was the decision maker for Plaintiff's termination based on the September 14, 2015 rule violations, was not the decision maker for the discipline assessed against nine of the ten alleged comparators, nor for the other comparator, Sandra Niemi, on five of six occasions when Niemi was disciplined.

## Procedural History

On May 1, 2017, Plaintiff filed his Complaint of Employment Discrimination against BNSF following receipt of his Notice of Right to Sue letter issued by the EEOC on March 1, 2017, alleging racial discrimination, color discrimination and retaliation for having asserted his protected rights. BNSF filed its motion to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), on September 18, 2017. This Court denied BNSF's motion to dismiss on September 28, 2017.

---

[6] While the Court will not repeat the lengthy details here, it notes that Defendant describes the alleged comparators in comprehensive detail. Plaintiff makes limited denials of fact. See Dkt. 72 at 12-18. The Court discusses the comparators as a whole later in this opinion.

8

Plaintiff filed his Amended Complaint on January 29, 2018. In his Amended Complaint, Plaintiff alleges racial discrimination pursuant to 42 U.S.C. § 1981, as amended, and retaliation for having filed a Charge of Discrimination with the EEOC against BNSF pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff alleges he was unfairly disciplined on the basis of race and retaliated against for filing a claim of discrimination with the EEOC, after which he was disciplined again and terminated.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id. Finally, "to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case." Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 702 (7th Cir. 2009).

## III. DISCUSSION

The analysis for race discrimination under § 1981 and Title VII are the same. "[W]e analyze both § 1981 and Title VII discrimination claims in the same manner[.]" Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998); see also Smith v. Chi Transit. Auth., 806 F.3d 900, 904 (7th Cir. 2015). Our Circuit Court has recently clarified the standard to be applied to Title VII claims at this stage. The Court has stated that the key inquiry in racial discrimination suits at summary judgment is whether a "reasonable juror could conclude" that Plaintiff would have avoided the adverse action if he had a different race, "and everything else had remained the same." LaRiviere v. Bd. of Trustees of S. Illinois Univ., 926 F.3d 356, 359 (7th Cir. 2019) (citing Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 764 (7th Cir. 2016)). "Arbitrarily categorizing evidence as 'direct' or 'indirect' is unhelpful and unnecessarily formalistic." Id. However, Courts "may draw upon the familiar McDonnell Douglas burden-shifting framework to determine if triable issues exist." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." LaRiviere, 926 F.3d at 360.

Under that framework, plaintiffs have the initial burden of establishing a prime facie case of discrimination. To do so, Plaintiff must show that "(1) [he] is a member of a protected class, (2) [his] job performance met [the employer's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." LaRiviere, 926 F.3d at 360 (quoting McKinney v. Office of Sheriff of Whitley Cty., 866 F.3d 803, 807 (7th Cir. 2017) (citation omitted)). Failure to establish any single element of the prima facie case dooms Plaintiff's discrimination claim. Bio v. Fed. Express Corp., 424 F.3d 593, 596 (7th Cir. 2005). Should Plaintiff make out a prima facie case, the burden shifts to the defendant employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to

submit evidence that the employer's explanation is pretextual." Simpson v. Franciscan All., Inc., 827 F.3d 656, 661 (7th Cir. 2016).

The Court finds that no reasonable juror could conclude that Plaintiff would have avoided his discipline and subsequent dismissal had he been of a different race and everything else remained the same. First, Plaintiff asserts that certain individuals engaged in a 'witch hunt' to get him fired and mishandled the investigations to see that they succeeded. However, Plaintiff fails to connect those alleged mishandlings to his race. Even assuming that the investigations were improperly conducted, or that certain individuals wanted to see him fired, Plaintiff still must connect these facts to *racial* discrimination on the part of his employer. He does not. Plaintiff provides no evidence regarding how other hearings were conducted for alleged comparators who were not of his protected class; he only asserts that others who conducted themselves similarly to how he allegedly conducted himself were treated more leniently.[7] And, as discussed *infra*, those comparators are not actually apt comparators for the purpose of showing that Plaintiff was discriminated against because of his race.

Second, under the McDonnell Douglas framework, which the Court draws upon, Plaintiff does not overcome his initial burden. Defendant does not dispute that its actions constituted adverse employment actions or that Plaintiff's race is a protected class. However, it argues that he did not meet Defendant's legitimate performance expectations and that the allegedly similarly situated individuals were not actually similarly situated. The Court agrees with Defendant on both of its arguments.

Plaintiff was not meeting the legitimate expectations of his employer when he was disciplined and terminated. Regarding the dishonesty incident on March 3, 2015, Plaintiff admits

---

[7] In addition, the Railway Labor Act preempts any claims based on an allegedly unfair discipline process under the CBA or an alleged violation of the CBA. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-53 (1994).

11

that he said he was not qualified. In fact, he was qualified. And even if he was expressing that he had to complete his Year B training or he would not qualify, he had until the end of the year to complete his Year B training. Despite Plaintiff's assertion regarding what he intended to convey, his statement was factually false and his resulting discipline was upheld by the PLB. The punishment recommended by Schroeder was not the maximum that Schroeder could have recommended, as this rule violation was a Stand Alone dismissible violation, further solidifying for the Court that Plaintiff's action here did not meet the legitimate expectations of BNSF. In addition, while the PLB overturned Plaintiff's later dismissal, it did so while reiterating that there was substantial evidence that Plaintiff failed to properly protect the shove movement on September 14, 2015 and that the discipline imposed was in accordance with BNSF policies.

The Court acknowledges that it must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). Here, Plaintiff maintains that the switch was already damaged before the shoving operation commenced. However, considering the PLB's findings on this issue, coupled with the significant honesty violation from March 3, 2015, under these circumstances the Court finds that Plaintiff was not meeting the legitimate performance expectations of his employer. Therefore his prima facie case must fail.

The Court is similarly convinced that Plaintiff's claim must fail because Plaintiff's alleged comparators are not similarly situated. On this point, a "court must look at all relevant factors, the number of which depends on the context of the case[.] . . . [Where a] plaintiff claims that [he] was disciplined by [his] employer more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must show that [he] is similarly situated with respect to performance, qualifications, and conduct . . . [which] normally entails a showing that the two

12

employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 330 (7th Cir. 2002) (citations, quotations, and emphasis omitted). An employee is similarly situated if the employee is comparable to the plaintiff "in all material respects." Crawford v. Ind. Harbor Belt R.R. Co., 461 F.3d 844, 846-847 (7th Cir. 2006). Being comparable in material respects "includes showing that co-workers engaged in comparable rule or policy violations." Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 723 (7th Cir. 2018).

It is significant that the comparators did not share the same disciplinary decision-maker as Plaintiff. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 330 (7th Cir. 2002) (normally a plaintiff must show "that the two [similarly situated] employees dealt with the same supervisor[.]"). As stated above, Ratulowski, who decided to terminate Plaintiff, was not involved in deciding to discipline nine of Plaintiff's ten alleged comparators. Regarding the lone remaining comparator, Sandra Niemi, Ratulowski was the decision-maker on only one of the six occasions when Niemi was disciplined, and on that one occasion Niemi's conduct did not constitute a Serious violation, nor did it occur during a review period for a prior rule violation.

As Defendant emphasizes, none of the alleged comparators committed the same or substantially similar offenses.[8] None of them were dishonest with a crew caller, manager, or supervisor. None of the comparators were involved in a situation involving a second Serious violation, occurring within a 36-month review period, where the comparator was not terminated as a result of the second Serious rule violation.

---

[8] Without restating the entire record for every comparator here, the Court emphasizes that it has reviewed the extensive undisputed facts regarding each comparator in coming to its conclusions. Dkt. 73 at 12-18.

13

Because he did not meet BNSF's legitimate performance expectations, nor show that a similarly situated non-African-American employee was treated more leniently, Plaintiff's prima facie case for race discrimination fails. Drawing on this conclusion, the Court finds that no reasonable juror could conclude that Plaintiff would have avoided the discipline and subsequent dismissal had he been of a different race and everything else remained the same. The Court need not address Defendant's arguments regarding having a legitimate, non-discriminatory basis for Plaintiff's discipline, nor arguments regarding pretext.

Finally, Plaintiff's claim of retaliation also fails. He asserts that he was fired in part as punishment for filing an EEOC charge of discrimination approximately one month before his hearing regarding the September 14 switch incident. In order to prevail, he must demonstrate a prima facie case by showing that he (1) engaged in a statutorily protected activity; (2) BNSF took an adverse employment action against him; and (3) the protected activity and the adverse employment action are causally related. Lord v. High Voltage Software, Inc., 839 F.3d 556, 563 (7th Cir. 2016). He must also show that the retaliation is the but-for cause of the challenged employment action. Id. BNSF admits that Plaintiff's filing of an EEOC charge was a statutorily protected activity, and that he suffered an adverse employment action. However, it argues that Plaintiff cannot show causation.

The Court agrees with Defendant. At the time of his termination, Plaintiff had already been disciplined for dishonesty, a potential Stand Alone dismissible violation. While his subsequent 36-month review period was underway, he allegedly committed another Serious violation, and he had already received notice of the hearing regarding that second violation when he filed the EEOC charge. The timing of his termination, then, is not suspiciously related to his EEOC charge.

14

In addition, Ratulowski—who decided to terminate Plaintiff—testified that he did not know about the EEOC charge at the time he made the decision to terminate Plaintiff, which would defeat the retaliation claim. Plaintiff testified that he had no personal knowledge regarding Ratulowski's knowledge of the EEOC charge. But regardless whether Ratulowski knew about the EEOC charge or not, Plaintiff cannot show that his filing of the EEOC charge was the but-for cause of his termination. There is no "convincing mosaic" of circumstantial evidence of retaliation here. Rhodes v. Illinois Dep't of Transportation, 359 F.3d 498, 504 (7th Cir. 2004). The retaliation claim fails.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to Plaintiff's claims of race discrimination and retaliation. Judgment is entered for Defendant.

IT IS SO ORDERED.     ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATE: November 30, 2020